IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AFFORDABLE RECOVERY HOUSING An Illinois not-for-profit corporation, | ) ) ) | Judge |
| | ) | Magistrate Judge |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| THE CITY OF BLUE ISLAND, a municipal corporation, and TERRY VRSHEK in his official capacity as Blue Island Fire Chief | ) ) ) ) | **TRIAL BY JURY DEMANDED** |
| Defendants. | ) ) | |

**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Affordable Recovery Housing ("ARH") seeks a temporary restraining order and preliminary injunction **to preserve the status quo** against the City of Blue Island, to prevent (1) 73 men in ARH's recovery program from being thrown out onto the streets of Blue Island without resources and (2) the destruction of ARH's religious, charitable operation.

Toward this end ARH seeks a TRO and preliminary injunction restraining Defendants the City of Blue Island, and Terry Vrshek in his official capacity as Blue Island Fire Chief, from removing, causing the removal, or threatening to remove ARH or any of its residents from the premises at 13811 S. Western Avenue in Blue Island; from assessing fines for continuing to use the property and for operating the recovery program at its property; and from initiating prosecutions against ARH for the use of the property.

1. ARH reincorporates the allegations of its complaint and attaches the John Dunleavy Declaration as Exhibit 1. As specifically noted therein:

1

a. The City and Fire Chief have ordered ARH to throw the 73 residents of its recovery program out onto the streets of Blue Island by 9:00 a.m. on Friday, June 1, 2012. Complaint ¶¶ 3, 8. The Fire Chief later said 14 persons could remain on the property until June 30, 2012, including John Dunleavy and his family. Dunleavy Decl. ¶ 38.

b. Also they have ordered ARH to cease operations by 9:00 a.m. on Friday, June 1, 2012. Complaint ¶¶ 3, 8. For both of the foregoing reasons ARH's religious mission is in jeopardy of being destroyed. Dunleavy Decl. ¶ 39.

c. Affordable Recovery Housing ("ARH") is a faith-based organization which provides in its vision statement, among other things: "Our Vision is to help individuals reach their full potential by the power and Grace of God and their active role in recovery with guidance, discipline and direction." The recovery plan they provide is the Christian-based, 12-step program. The program is staffed by 14 persons, all or most of whom are Christians. The premise of the program is that a strong belief in, and reliance upon, God is necessary to recovery. They are located in the Catholic Convent run by the Sisters and Mother of Sorrows. Dunleavy Declaration ¶ 36.

d. As authorized by the Fire Chief's letter of May 24, 2012 ARH has appealed the order to the Blue Island City Council, but the City Council has not contacted ARH regarding a hearing or any other next step. Complaint ¶¶ 4, 9.

2. A Temporary Restraining Order should be issued immediately because ARH's First Amendment rights to free exercise of religion and free association, the Fifth Amendment right to procedural due process, and the Illinois Religious Freedom Restoration Act (which

enforces the Free Exercise right) are being violated, and ARH is thus being harmed irreparably. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).

3. In *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) the Court set forth the elements necessary to obtain a preliminary injunction, which are the same as a temporary restraining order:

> To win a preliminary injunction, a party must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest. (Citation.) If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis, (citation), which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied.

4. But not all elements are at issue when First Amendment rights are infringed. As explained by the Seventh Circuit in *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004):

> When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. (Citations.) "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," (citation), and money damages are therefore inadequate, (citation). Concomitantly, there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because "it is always in the public interest to protect First Amendment liberties." (Citations.) ("We believe that the public interest is better served by . . . protecting [] core First Amendment rights"), (citation) ("Surely, upholding constitutional rights serves the public interest.").

5. In sum, because "[t]he loss of First Amendment freedoms is presumed to constitute irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest" only two elements can

3

be at issue here. *Christian Legal Society* at 859. The first is "the likelihood of success on the merits", *Christian Legal Society* at 859-67, and the second is balancing of harms, *Christian Legal Society* at 867.

6. The likelihood of success favors ARH. In determining "the likelihood of success on the merits" ARH need demonstrate only a "better than negligible" probability of prevailing. *Badger v. Boulevard Bancorp, Inc.*, 1991 U.S. Dist. LEXIS 6071 at *11 (N.D. Ill. 1991) ("[a]lthough the [movant] must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that 'the plaintiff's chances are better than negligible...' Furthermore, even this low threshold of 'better than negligible' decreases 'the more heavily the balance of harms weighs in [the movant's] favor'"); see, also *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 293 (7th Cir. 1974) ("[t]he greater the urgency and the greater the extent of the impending injury, the more appropriate it may be to retain the status quo temporarily while the court appraises the strength of the legal claim....")

7. As to likelihood of success the record contains the following:

    a. In the preceding nine months **ARH passed five or six fire inspections** under Fire Chief Copp, the predecessor to Chief Vrshek. When John Dunleavy went to City Hall to inspect his file he found that all five or six fire inspection reports had been removed from the file, with only the five-year plan agreement between ARH and the city left in the file. Dunleavy Decl. ¶ 35.

    b. As part of the five year plan previously agreed to by the City ARH has installed a "state of the art" fire alarm system. Dunleavy Decl. ¶ 37. Given the presence of this alarm system, the May 29, 2012 report of Yung Architects, LLC makes it clear that installation of a sprinkler system "may be deferred for an indefinite

4

    period of time". Complaint ¶ 15, and Exhibit 3, Exhibits A and B; and Dunleavy Decl. ¶ 40.

   c. Although the Fire Chief asserts the sprinkler system is necessary, the 2003 International Building Code (which the City formally has adopted) provides that "[a]pproved automatic sprinkler systems are required only in "new buildings and structures." Exhibit 2, attached hereto.

   d. Additionally, the City Council may delay, modify or overturn the Fire Chief's order.

8. ARH also prevails on the balancing of harms:

   a. Throwing 73 men, many without family or resources, out on the streets of Blue Island truly is dangerous, draconian and utterly heartless.

   b. Destroying ARH's religious and charitable mission likewise would be devastating.

   c. As noted above in ¶¶ 7 a and b, ARH already has installed a "state of the art" alarm system which makes sprinklers unnecessary; and installation of sprinklers appears not to be required under the Blue Island Building Code, particularly for a building which has operated without them as a convent and boarding house for 70 years.

   d. The Fire Chief's letter is utterly lacking an explanation for the urgency in imposing the June 1st deadline.

   e. Similarly, the Fire Chief's letter makes no citation to the Building Code, or any other code, in support of the need for sprinklers. For these reasons the draconian

5

vacation or order appears to be arbitrary, especially in light of the six fire inspections approved by Fire Chief Copp.

9. Moreover, because First Amendment freedoms are at issue, the City must demonstrate "regulations adopted to serve compelling state interests" which are "significantly less restrictive" than throwing 73 men on the streets of Blue Island and completely destroying ARH's mission and use of its property. *Christian Legal Society* at 861-62; see also IRFRA § 15: (The government must prove its actions further "a compelling governmental interest[] and is the least restrictive means of furthering that compelling governmental interest.")

10. The Seventh Circuit has condemned the arbitrary and irrational use of power by city officials against religious organizations, and concluded that such constitutes a substantial burden under the Religious Land Use and Institutionalized Persons Act. *World Outreach Conference Center v. City of Chicago*, 591 F.3d 531, 537-38 (7th Cir. 2009); *Saints Constantine and Helen Greek Orthodox Church, Inc.*, 396 F.3d 895, 900-01 (7th Cir. 2005). The same conclusion should be reached as to the constitutional claims, and under IRFRA which has similar wording. See, also *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534, 537-38 (1993) regarding the abuse of power by city officials when directed at religiously motivated conduct.

WHEREFORE, Affordable Recovery Housing requests that the Court:

A. Grant a temporary restraining order preserving the *status quo* by restraining Defendants City of Blue Island and Terry Vrshek from removing, causing the removal, or threatening to remove ARH or any of its residents from the premises at 13811 S. Western Avenue in Blue Island; from assessing fines for continuing to use the property and for operating the recovery program at its property; and from initiating prosecutions against ARH for the use of the property.

B. Set a date for a preliminary injunction hearing; and

C. Grant other just relief.

**RESPECTFULLY SUBMITTED
AFFORDABLE RECOVERY HOUSING**

/s Andy R. Norman
Andy R. Norman

John W. Mauck
Andy R. Norman
MAUCK & BAKER
1 N. LaSalle #600
Chicago IL 60602
(312) 726-1243
F:\Shared\Affordable Recovery Foundation\MOTTRO&PI20120531.docx