IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AFFORDABLE RECOVERY HOUSING ) <br> An Illinois not-for-profit corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF BLUE ISLAND, a municipal ) <br> corporation, and TERRY VRSHEK in his ) <br> official capacity as Blue Island Fire Chief ) <br> ) <br> Defendants. ) | Case No. 12-cv-04241 <br><br> Judge Robert M. Dow Jr. <br><br> **TRIAL BY JURY DEMANDED** |

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
AND DECLARATORY RELIEF AS A MATTER OF LAW WITH RESPECT TO THE
CITY'S ORDER THAT PLAINTIFF INSTALL A SPRINKLER SYSTEM AND THE
FIRE CHIEF'S SUMMARY EVICTION AND SHUTDOWN ORDER**

Plaintiff Affordable Recovery Housing ("ARH") seeks a preliminary injunction **to preserve the status quo** against the City of Blue Island to prevent (1) the men in ARH's recovery program from being thrown out onto the streets of Blue Island without resources and (2) the destruction of ARH's religious, charitable operation. ARH also seeks a declaratory judgment as a matter of law that ARH is not required to install a sprinkler system and that the Fire Chief has no authority to order the summary shutdown of ARH and eviction of its residents.

Toward this end ARH seeks a preliminary injunction restraining Defendants the City of Blue Island, and Terry Vrshek in his official capacity as Blue Island Fire Chief, from removing, causing the removal, or threatening to remove ARH or any of its residents from the premises at 13811 S. Western Avenue in Blue Island; from assessing fines for continuing to use the property and for operating transitional housing at its property; and from initiating prosecutions against ARH for the use of the property. In addition, ARH seeks a declaratory judgment as a matter of

1

law that the 2012 NFPA Life Safety Code ("LSC"), asserted by the City to apply to ARH, does not require ARH to install a fire sprinkler system to the buildings occupied and used by ARH at 13811 S. Western Avenue in Blue Island because ARH's buildings are considered "existing buildings" under the Code. LSC §§ 33.1.1.1, 33.2.3.5.1. For purposes of this motion, ARH does not contest application to it of the 2012 LSC, but reserves the right to contest it later in the case.

1.  ARH reincorporates the allegations of its First Amended Complaint. As specifically noted therein:

    a. On May 24, 2012, the City served upon ARH a letter demanding that ARH vacate the premises by June 1, 2012 because ARH had not installed a sprinkler system. **Amended Complaint ¶ 3** (hereinafter "Compl.)**.**

    b. On May 28, 2012 ARH appealed to the City Council. On June 12, 2012, the City Council held a meeting at which time ARH presented their appeal from the May 24, 2012 letter requiring ARH to vacate the property. After the hearing, the City Council voted to affirm the May 24 order. **Compl. ¶ 4.**

    c. On June 1, 2012 the Court, by agreement of the parties, entered an order in which, *inter alia*, the City would not force ARH to vacate the premises for at least 30 days, or until July 2, 2012. **Compl. ¶ 5.**

    d. By the Court's June 1 order, the City was required to explain the basis for the asserted city code violations. On June 5, 2012, Defendants' counsel sent Plaintiff's counsel a letter which contained a letter dated June 4, 2012 from Chief Terry Vrshek. In that letter Vrshek asserts the NFPA 2012 LSC was adopted by the City and Section 32.2.3.5 of the 2012 NFPA LSC requires ARH to install a sprinkler system. **Ex. 5 of Compl.; Compl. ¶¶ 19-20, 25.**

2

e. On June 8, 2012 Plaintiff's attorney sent Defendants' attorney a letter requesting, *inter alia*, the statutory basis for Chief Vrshek's authority to require Affordable Recovery Housing to cease operations, including evicting its residents, or closing the business within one week. **Compl. ¶ 21.**

f. On June 10, 2012 Defendants' attorney responded the Plaintiff's June 10 letter but did not respond to Plaintiff's request for Chief Vrshek's authority to require Affordable Recovery Housing to cease operations. **Compl. ¶ 22.**

g. Chapters 32 and 33 of the NFPA 2012 LSC are entitled "New and Existing Residential Board and Care Occupancies," with Chapter 32 providing the requirements for new residential board and care facilities and Chapter 33 providing the requirements for existing residential board and care facilities. **Compl. ¶ 27; see Exhibit A**, a copy of Chapters 32 and 33 of the 2012 LSC).

h. Section 32.1.1.1 states that "[t]he requirements of this chapter shall apply to new buildings or portions thereof used as residential board and care occupancies." In contrast, Section 33.1.1.1 states that "[t]he requirements of this chapter shall apply to existing buildings or portions thereof currently occupied as residential board and care occupancies." **Compl. ¶ 28; Exhibit A**.

i. Section 3.3.36.5 of the LSC defines "existing building" to mean: "A building erected or officially authorized prior to the effective date of the adoption of this edition of the Code by the agency or jurisdiction." **Compl. ¶ 29; Exhibit A.**

j. Because ARH operates on property that contains buildings that are existing, and because ARH has been operating on the property and in these buildings since at

3

    least March 2011, Chapter 33 of the LSC applies to ARH, not Chapter 32. **Compl. ¶ 30.**

  k. Section 32.2.3.5.1, which applies to new buildings provides: "All facilities, other than those meeting the requirements of 32.2.3.5.2, shall be protected throughout by an approved automatic sprinkler system . . . ." **Compl. ¶ 31; Exhibit A.**

  l. Section 33.2.3.5.1, which applies to existing buildings, does not provide a requirement that existing facilities have sprinkler systems. See LSC p. 1062. Because ARH's facilities are existing, not new, Chapter 33, which does not require an automatic sprinkler system, applies, not Chapter 32. **Compl. ¶¶ 32-33**.

  m. The introductory portion of Chapters 32 and 33 (p. 1037), provides:

> the committee also revised the provisions of Chapter 32 of this Code, which addresses new facilities, so they no longer depend on the determination of evacuation capability. Chapter 33, which addresses the existing facilities, retains the evacuation capability provisions *so as to avoid unnecessarily placing existing facilities out of compliance*.

LSC p. 1035 (emphasis added); **Compl.¶ 34**.

  n. Instead of sprinklers, existing facilities can rely upon evacuation capabilities, resident buddy systems, "point of safety," structural fire endurance, types and arrangement of means of escape and exits, corridor separation provisions, the "defend in place concept" and others. LSC p. 1042-43; **Compl.¶ 35.**

  2. A preliminary injunction should be issued immediately because ARH's First Amendment rights to free exercise of religion and free association, the Fifth Amendment right to procedural due process, and the Illinois Religious Freedom Restoration Act (which enforces the Free Exercise right) are being violated, and ARH is thus being harmed irreparably. "The loss of

4

First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).

3. Although the LSC may appear on its face to be neutral and generally applicable, the City's misguided application of it to ARH to require sprinklers and to give the fire chief authority to evict ARH and its residents is not neutral and generally applicable, in violation of the First Amendment. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537 (1993).

4. In *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) the Court set forth the elements necessary to obtain a preliminary injunction:

> To win a preliminary injunction, a party must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest. (Citation.) If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis, (citation), which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied.

5. But not all elements are at issue when First Amendment rights are infringed. As explained by the Seventh Circuit in *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004):

> When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. (Citations.) "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," (citation), and money damages are therefore inadequate, (citation). Concomitantly, there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because "it is always in the public interest to protect First Amendment liberties." (Citations.) ("We believe that the public interest is better served by . . . protecting [] core First Amendment rights"), (citation) ("Surely, upholding constitutional rights serves the public interest.").

5

6. In sum, because "[t]he loss of First Amendment freedoms is presumed to constitute irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest" only two elements can be at issue here. *Christian Legal Society* at 859. The first is "the likelihood of success on the merits", *Christian Legal Society* at 859-67, and the second is balancing of harms, *Christian Legal Society* at 867.

7. The likelihood of success favors ARH. In determining "the likelihood of success on the merits" ARH need demonstrate only a "better than negligible" probability of prevailing. *Badger v. Boulevard Bancorp, Inc.*, 1991 U.S. Dist. LEXIS 6071 at *11 (N.D. Ill. 1991) ("[a]lthough the [movant] must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that 'the plaintiff's chances are better than negligible...' Furthermore, even this low threshold of 'better than negligible' decreases 'the more heavily the balance of harms weighs in [the movant's] favor'"); *see also Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 293 (7th Cir. 1974) ("[t]he greater the urgency and the greater the extent of the impending injury, the more appropriate it may be to retain the status quo temporarily while the court appraises the strength of the legal claim . . . .")

8. As to likelihood of success, there are at least three reasons why the likelihood of success favors Plaintiff:

9. First, despite this Court's order that Defendant furnish plaintiff with the basis for the code violations, and despite Plaintiff's requests via letter on June 8 and 11, Defendant has not furnished to Plaintiff any statutory basis for Chief Vrshek's authority to require Affordable Recovery Housing to cease operations, including evicting its residents, or closing the business within one week. Chief Vrshek's order (and the City's Council's June 12 approval of that order)

6

exceeded his authority because there is no statutory basis for Defendants to require ARH to cease operations and evict its residents.

10. Second, the 2012 LSC, cited by Defendants as the basis for the requirement that ARH install a sprinkler system, specifically and clearly exempts existing buildings from installing sprinkler systems and therefore ARH is not required to install a sprinkler system. *See* **Exhibit A**, LSC Section 33.2.3.5.1; *see also* ¶¶1(g)-(n) above.

11. Finally, a requirement that ARH install a sprinkler system clearly infringes on ARH's hybrid rights to free exercise and freedom of association under the First Amendment of the U.S. Constitution.

12. Because First Amendment freedoms are at issue, the City must demonstrate "regulations adopted to serve compelling state interests" which are "significantly less restrictive" than throwing 73 men on the streets of Blue Island and completely destroying ARH's mission and use of its property. *Christian Legal Society* at 861-62; see also IRFRA § 15: (The government must prove its actions further "a compelling governmental interest[] and is the least restrictive means of furthering that compelling governmental interest.")

13. The City of Blue Island cannot show a compelling government interest that is narrowly tailored because the 2012 LSC makes exceptions that allow similarly situated uses to operate without a sprinkler system. See LSC §§ 33.2.3.5.1. Because Blue Island makes exceptions for similar uses, it cannot argue that it has a compelling interest in requiring ARH to install sprinkler systems. See LSC §§ 33.2.3.5.1.

14. Further, strengthening ARH's First Amendment claim, in the preceding nine months **ARH passed five or six fire inspections** under Fire Chief Copp, the predecessor to Chief Vrshek. When John Dunleavy went to City Hall to inspect his file he found that all five or

7

six fire inspection reports had been removed from the file, with only the five-year plan agreement between ARH and the city left in the file. **Exhibit B**, Dunleavy Decl. ¶ 35. Plaintiff has a copy of one of these inspection reports which Mary Jo Dunleavy, John's wife, saved at the time of the inspection, which is attached as **Exhibit C**.

    15.    As part of the five year plan previously agreed to by the City ARH has installed a "state of the art" fire alarm system. **Exhibit B**, Dunleavy Decl. ¶ 37. Given the presence of this alarm system, the May 29, 2012 report of Yung Architects, LLC makes it clear that installation of a sprinkler system "may be deferred for an indefinite period of time". Compl. ¶ 38; **Exhibit B.** Dunleavy Decl. ¶ 40. This is further evidence that the City does not have a compelling government interest in requiring ARH to install a sprinkler system.

    16.    ARH also prevails on the balancing of harms:

    a. Throwing 73 men, many without family or resources, out on the streets of Blue Island truly is dangerous, draconian and utterly heartless.

    b. Destroying ARH's religious and charitable mission likewise would be devastating.

    c. As noted above in ¶¶ 1(g)-(n), 9, the 2012 LSC, cited by Defendants as the basis for the requirement that ARH install a sprinkler system, specifically and clearly exempts existing buildings from installing sprinkler systems and therefore ARH is not required to install a sprinkler system. There is no harm to the City in preventing it from enforcing a requirement not in the LSC.

    d. As noted above in ¶ 15, ARH already has installed a "state of the art" alarm system which makes sprinklers unnecessary; and installation of sprinklers appears

8

not to be required under the Blue Island Building Code, particularly for a building which has operated without them as a convent and boarding house for 70 years.

    e. The Fire Chief's order lacks a statutory basis to require ARH to cease operations and evict its residents.

17. The Seventh Circuit has condemned the arbitrary and irrational use of power by city officials against religious organizations, and concluded that such constitutes a substantial burden under the Religious Land Use and Institutionalized Persons Act. *World Outreach Conference Center v. City of Chicago*, 591 F.3d 531, 537-38 (7th Cir. 2009); *Saints Constantine and Helen Greek Orthodox Church, Inc.*, 396 F.3d 895, 900-01 (7th Cir. 2005). The same conclusion should be reached as to the constitutional claims, and under IRFRA which has similar wording. See, also *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534, 537-38 (1993) regarding the abuse of power by city officials when directed at religiously motivated conduct.

**WHEREFORE**, Affordable Recovery Housing requests that the Court:

    A. Grant a preliminary injunction preserving the status quo by restraining Defendant City of Blue Island from removing, causing the removal or threatening to remove ARH or any of its residents from the premises at 13811 S. Western Avenue in Blue Island; from assessing fines for continuing to use its property and for operating the transitional housing program at its property; and from initiating prosecutions against ARH for the use of the property;

    B. Enter a declaratory judgment as a matter of law that the City of Blue Island has no authority to order ARH to install sprinklers, to shut down its business, or to order an eviction of ARH or its residents from the premises at 13811 S. Western Avenue in Blue Island;

  C. Grant other just relief.

                Respectfully Submitted,

                **AFFORDABLE RECOVERY HOUSING**

                /s/ Andy R. Norman
                Andy R. Norman

John W. Mauck
Andy R. Norman
Jeffrey M. Schwab
Mauck & Baker, LLC
1 North LaSalle Street, Suite 600
Chicago, IL 60602
(312) 726-1243

F:\Clients\3065\Motions\Mot_PrelimInj_Sprinklers_final_20120619.docx