**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AFFORDABLE RECOVERY HOUSING | ) | |
| An Illinois not-for-profit corporation, | ) | |
| | ) | Case No. 12-cv-04241 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Robert M. Dow Jr. |
| | ) | |
| THE CITY OF BLUE ISLAND, a municipal | ) | |
| corporation, and TERRY VRSHEK in his | ) | |
| official capacity as Blue Island Fire Chief | ) | **TRIAL BY JURY DEMANDED** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. NATURE OF THE CASE**

Affordable Recovery Housing ("ARH") is a faith-based organization that provides

housing and recovery services to adult men struggling with alcohol addiction. Statement of Facts

("SOF") 1. ARH had been operating and housing its residents in recovery at 13811 S. Western

Avenue in Blue Island (the "Property"), which it rents from the Mantellate Sisters of Mary. SOF

7. However, Blue Island required ARH to remove its residents from the property in 2012 because

ARH was allegedly required to install automatic fire sprinkler systems in the buildings housing

its residents. SOF 22. This Memorandum of Law in Support of Plaintiff's Motion for Partial

Summary Judgment argues that requiring Plaintiff to install sprinkler systems in the buildings to

house residents violates Plaintiff's rights under the Free Exercise and Free Association Clauses

of the First Amendment of the United States Constitution and the Illinois Religious Freedom

Restoration Act ("IRFRA").

In September 2013, the State of Illinois licensed ARH to operate a Recovery Home at the

Mother of Sorrows location. SOF 32. Illinois has enacted the year 2000 version of the Life

Safety Code, ("LSC") which preempts Blue Island's use of the 2012 LSC. SOF 33. ARH's

motion and this Memorandum seek partial summary judgment, and declaratory and injunctive

relief toward the end that ARH can move men in recovery into its facilities without sprinklers.

## II. FACTS

The facts related to this Memorandum of Law in Support of the Motion for Partial

Summary Judgment are set out in Plaintiff's Statement of Material Facts and the Motion itself.

## III. ARGUMENT

### A. The Illinois Administrative Code Preempts Blue Island's Application of the 2012 Life Safety Code to Plaintiff

The State of Illinois requires that any person or corporation seeking to provide Recovery

Home services obtain a license from the State. 20 ILCS 301/15-10. The Illinois Administrative

Code, Title 77, Section 2060.509 provides the requirements for obtaining a license for a

Recovery Home. The Code defines Recovery Home as

> alcohol and drug free housing authorized by an intervention license issued by the
> Department, whose rules, peer-led groups, staff activities and/or other structured
> operations are directed toward maintenance of sobriety for persons in early
> recovery from substance abuse or who recently have completed substance abuse
> treatment services or who may still be receiving such treatment services at another
> licensed facility.

Ill. Admin. Code title 77, §2060.103 (see also §2060.509). **Exhibit C**.

On September 11, 2013, ARH obtained a license to operate a Recovery Home at the Mother

of Sorrows location from the Illinois Department of Human Services/Division of Alcoholism and

Substance Abuse. SOF 32.

Among the other requirements, Ill. Admin. Code title 77, §2060.509 states:

> In order to be called a Recovery Home, the home shall:
> . . . (e) comply with all applicable zoning and local building ordinances and the
> provisions specified in Chapter 26 (Lodging or Rooming Houses) of the National
> Fire Protection Association's (NFPA) Life Safety Code of 2000 (no later

2

amendments or editions included) for any building housing 16 or fewer residents
and with the provisions specified in Chapter 29 (Existing Hotels and Dormitories)
of the NFPA Life Safety Code of 2000 (**no later amendments or editions
included**) for any building housing 17 or more residents;

(emphasis added). **Exhibit C.**

Buildings C and D are to be used for the purposes of housing residents in recovery. SOF 11,
12. Both Buildings C and D will and can house 17 or more residents each. SOF 11, 12. Other
than installing sprinklers in Buildings C and D, as the City asserts is required in the 2012 Life
Safety Code adopted by the City of Blue Island, ARH has complied with all other Blue Island
local building ordinances. SOF 31.

According to the Illinois Administrative Code, as stated above, Recovery Homes with more
than 17 residents are to abide by Chapter 29 of the 2000 LSC, "Existing Hotels and
Dormitories." Ill. Admin. Code title 77, §2060.509. As the title implies, Chapter 29 of the 2000
applies to existing buildings or structures that are currently occupied as hotel or dormitory
occupancies. Section 29.1.1.1, **Exhibit E**. Nonetheless, the Illinois Administrative Code is clear
that a Recovery Home for any building housing 17 or more residents, as defined by the Illinois
Administrative Code title 77, §2060.103, must comply with the provisions specified in Chapter
29 of the 2000 LSC for existing hotels and dormitories (**no later amendments or editions
included**). The Illinois Administrative Code does not distinguish between new and existing
Recovery Homes. Thus, all Recovery Homes with buildings housing 17 or more residents,
regardless of whether they are new or existing buildings, must comply with Chapter 29 of the
2000 LSC for existing hotel or dormitory occupancies.

It should be noted that the 2000 LSC, similar to the 2012 LSC, *does* include sections on New
Residential Board and Care Occupancies (Chapter 32) and Existing Residential Board and Care
Occupancies (Chapter 33). Thus, the Illinois Administrative Code *could* have required Recovery

3

Homes to comply with either Chapters 32[1] or Chapters 33 or both, for Residential Board and Care occupancies. However, the Illinois Administrative Code specifically requires that Recovery Homes must comply with the 2000 LSC requirements for **existing hotels and dormitories** in Chapter 29. Thus, both new and existing Recovery Homes, including ARH, must comply with the 2000 LSC requirements for existing hotels and dormitories, **not** the requirements for new or existing Residential Board and Care occupancies in Chapters 32 and 33.

Section 29.3.5 of the 2000 LSC provides the extinguishment requirements for existing hotels and dormitories. Section 29.3.5 **does not** provide a requirement that existing facilities have sprinkler systems unless they are high-rise buildings. Section 29.3.5.1 states:

> Where an automatic sprinkler system is installed, either for total or partial building coverage, the system shall be in accordance with Section 9.7. In buildings up to and including four stories in height, systems in accordance with NFPA 13R, *Standard for the Installation of Sprinkler Systems in Residential Occupancies up to and Including Four Stories in Height*, shall be permitted.

**Exhibit E.**

Section 29.3.5.1 **does not** provide a requirement that existing hotels and dormitories must install sprinklers. Rather, it simply states the requirements for sprinkler systems where they are installed. Section 29.3.5.2 states: "All high-rise buildings shall be protected throughout by an approved, supervised automatic sprinkler system in accordance with 29.3.5.1." **Exhibit E.** Thus, under Chapter 29 only high-rise buildings must install an automatic sprinkler system.

Section 3.3.25.6 defines a "high-rise building" as "A building greater than 75 feet in height where the building height is measured from the lowest level of fire department access to the floor of the highest occupiable story." **Exhibit E.** Building C is a three story building and Building D is a two story building. Both Buildings C and D are less than 75 feet high. SOF 29. Therefore,

---

[1] It should be noted that both the 2000 and 2012 LSC's provide a requirement for sprinklers in Chapter 32 for "New Residential Board and Care Occupancies" See **Exhibits E and F**.

Buildings C and D are not high-rises. Thus, under Chapter 29 of the 2000 LSC, ARH is not required to install automatic sprinkler systems in Buildings C and D. Therefore, as they exist now, Buildings C and D comply with the 2000 LSC's requirements with respect to sprinklers.

The City, on the other hand, asserts that the 2012 LSC, which was adopted on May 13, 2012 (SOF 34), applies to Buildings C and D. The City applies the 2012 LSC code to Buildings C and D asserting that those buildings are governed by Chapter 32 of the 2012 LSC for "New Residential Board and Care Occupancies." Section 32.2.3.5.1, which applies to new buildings provides: "All facilities, other than those meeting the requirements of 32.2.3.5.2, shall be protected throughout by an approved automatic sprinkler system . . . ." 2012 LSC, relevant portions, attached as **Exhibit F**. Therefore, according to the City's interpretation of the 2012 LSC, which it asserts applies to Plaintiff, Plaintiff must install sprinkler systems in Buildings C and D.

The question, then, is whether the 2012 LSC applies to ARH in light of the requirements imposed by the Illinois Administrative Code. Here, while the Ill. Admin. Code title 77, §2060.509 states that Recovery Homes are to comply with applicable zoning and building codes, it specifically singles out that Recovery Homes must comply with Chapter 29 of the 2000 Life Safety Code for buildings housing more than 17 people (and with Chapter 26 of the 2000 Life Safety Code for buildings housing less than 17 people). By singling out the Life Safety Code, the Administrative Code distinguishes the Life Safety Code and local building codes, as the phrase is used in §2060.509. In other words, the term "local building codes" does not mean the Life Safety Code for purposes of the Administrative Code. Indeed, Title 77, Section 2060.103 of the Illinois Administrative Code defines the term "Life Safety Code of 2000" thus distinguishing it from local building codes. As such, the Illinois Administrative Code application of Chapter 29 of the

2000 Life Safety Code to Plaintiff as a Recovery Home conflicts with Blue Island's attempted application of Chapter 32 of the 2012 Life Safety Code to Plaintiff. For the reasons explained below, the State's 2000 LSC requirement for Recovery Homes **preempts** Blue Island's 2012 LSC requirement.

"As applied to state action versus local action, preemption means that where the legislature has adopted a scheme for regulation of a given subject, local legislative control over such phases of the subject as are covered by state regulation ceases." *Pesticide Public Policy Foundation v. Wauconda*, 622 F. Supp. 423, 428 (N.D. Ill. 1985) (quoting *Hutchcraft Van Service, Inc. v. City of Urbana Human Relations Commission*, 104 Ill. App. 3d 817, 823 (4th Dist. 1982). There are two separate standards for preemption based on whether a municipality is home rule or not home rule. Under the Illinois Constitution, in order to preempt a home rule unit's exercise of legislative power, the General Assembly must expressly state that it is doing so in the statute or regulation. *Pesticide Public Policy Foundation*, 622 F. Supp. at 428.

However, with regard to a non-home rule unit like the City of Blue Island, (SOF 3) legislative intent to preempt may be implied. *Id.* at 428-429. "Exclusivity may be expressed in other ways, notably by enactment of a comprehensive regulatory scheme. . . ." *Hutchcraft*, 104 Ill. App. 3d at 823. (quoting *Illinois Liquor Control Commission v. City of Joliet*, 26 Ill. App. 3d 27, 32 (1975)) (citations omitted).

Here, the State has enacted a comprehensive regulatory scheme with respect to licensed Recovery Homes. Where the State has established applicable standards governing the regulation of certain areas, municipalities are not generally authorized to enact more restrictive regulations in the absence of specific authority to do so. *Dolson Outdoor Advertising Co. v. Macomb*, 46 Ill. App. 3d 116, 121 (3d Dist. 1977).

Numerous courts have applied preemption against non-home rule units: In *Carlson v. Village of Worth*, 62 Ill.2d 406 (1975), the Illinois Supreme Court had held that the State EPA preempts non-home rule units from regulating sanitary landfills. In *Dolson*, the plaintiff obtained a permit to erect off-premise advertising from the Illinois Department of Transportation, pursuant to the Illinois Highway Advertising Control Act. But the City of Macomb, a non-home rule municipality, had enacted a zoning ordinance which prohibited billboards in certain areas. *Dolson*, 46 Ill. App. 3d at 117. The court concluded that the municipality's ordinance was void in the face of comprehensive State regulation of highway advertising. *Id.* at 121. Similarly, in *Union National Bank and Trust Co. v. Board of Supervisors of Kendall County*, 65 Ill. App. 3d 1004 (1978), Kendall County, a non-home rule county, applied its zoning ordinance to deny plaintiffs' right to strip-mine limestone on their property pursuant to a permit issued by the State under the Reclamation Act. The court held that the General Assembly, by enacting a comprehensive regulatory scheme regarding surface mining and reclamation, implied that non-home rule units of local government should have no power to regulate this activity. *Id.* at 1008. Finally, in *Pesticide Public Policy Foundation*, 622 F. Supp. at 432, the Court found that where the state had enacted regulations governing pesticides, the non-home rule municipality could not enact more restrictive regulations of pesticides.

Because the State's regulations of Recovery Home include a comprehensive scheme with specific regulations regarding the 2000 Life Safety Code[2], Blue Island is not generally authorized to apply more restrictive regulations, the 2012 Life Safety Code in this case, in the absence of specific authority to do so. *Id.* It is quite clear that Blue Island **does not** have specific authority to apply more restrictive regulations in the form of the 2012 Life Safety Code against

---

[2] The Administrative Code provides a broad list of requirements for Recovery Homes that govern all the aspects of running a Recovery Home, including, but not limited to, operations, management, financial, safety, insurance and staff requirements. See Exhibit C.

7

ARH because, while the Illinois Administrative Code does allow the regulation of Recovery Homes in Blue Island with respect to its zoning and building codes, it specifically states that Recovery Homes housing more than 17 people must comply with Chapter 29 of the 2000 LSC and does not mention any authority for municipalities to regulate under the Life Safety Code in a more restrictive way. Indeed, the Illinois Administrative Code explicitly says "no later amendments or editions included." Therefore, ARH must comply with Chapter 29 of the 2000 LSC and Blue Island cannot impose the 2012 LSC on ARH. Thus, Blue Island's attempt to impose the 2012 LSC on ARH is improper.

**B. Blue Island's Application of the 2012 Life Safety Code Violates Plaintiff's First Amendment Rights to Free Exercise and Free Association and the Illinois Religious Freedom Restoration Act**

Blue Island's attempt to apply the 2012 Life Safety Code to require Plaintiff to install sprinklers in Buildings C and D violates Plaintiff's rights to Free Exercise and Free Association under the First Amendment and the Illinois Religious Freedom Restoration Act because the Illinois Administrative Code preempts Blue Island's application of the 2012 LSC to Plaintiff and therefore Blue Island has no compelling governmental interest in applying the 2012 LSC to Plaintiff.

**1. The Application of the 2012 to Plaintiff Violates Plaintiff's Rights to Free Exercise Under the First Amendment and IRFRA**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." In *Employment Division v. Smith*, 494 U.S. 872, 881, 882, 884 (1990), and *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 537 (1993), the Supreme Court explained the test applied in Free Exercise cases under the First Amendment to the U.S. Constitution: the compelling interest test (i.e., strict scrutiny) applies where religion is directly regulated but not to

8

neutral laws of general applicability over religious activities. However, **the compelling interest test (i.e., strict scrutiny) will apply to neutral laws of general applicability if**: (1) the government is allowed to make individualized assessments or (2) a "hybrid rights" claim exists: the free exercise claim is connected with other constitutional protections, such as free speech. The compelling interest test (strict scrutiny) requires the government action to be "justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531-32.

In response to Smith, Illinois passed the Illinois Religious Freedom Restoration Act of 1998, (IRFRA), 775 ILCS 35/10(b)(1) with the following purpose:

> To restore the compelling interest test as set forth in *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and *Sherbert v. Verner*, 374 U.S. 398 (1963), and to guarantee that a test of compelling governmental interest will be imposed on all State and local (including home rule unit) laws, ordinances, policies, procedures, practices, and governmental actions in all cases in which the free exercise of religion is substantially burdened.

Section 15 of IRFRA provides the test to be applied (emphasis added):

> Free exercise of religion protected. **Governments may not substantially burden a person's exercise of religion**, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest.

In this case, the compelling interest test applies under both *Smith* and IRFRA. Under *Smith*, the compelling interest test would also apply because a "hybrid rights" claim exists. Plaintiff asserts that their Free Exercise rights are connected with other constitutionally protected rights: the right to free association and the right to procedural due process. In addition, under *Smith*, Blue Island has made an "individualized assessment" by focusing on ARH's use and not regulating Recovery Homes similarly. *See, i.e.*, SOF 16-24.

9

Under IRFRA, the question is whether Defendant's actions have substantially burdened Plaintiff's exercise of religion by requiring Plaintiff to install sprinkler systems and having vacated Plaintiff's clients from the facility. A substantial burden exists where a city's actions cause the plaintiff to endure "delay, uncertainty, and expense." *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005). Here, Blue Island's application of the 2012 LSC requiring Plaintiff to install sprinklers and evicting Plaintiff's clients from the property which has effectively ceased its operations at Mother of Sorrows and made it impossible to fulfill ARH's mission, has substantially burdened Plaintiff's exercise of religion. Indeed, the cost to comply with the installation of sprinklers in both buildings might be in the area of $500,000. SOF 37.

Once Plaintiffs have established that the compelling interest test applies under the *Smith* test, and under IRFRA once Plaintiffs have established a substantial burden, the burden shifts to Defendant to show a compelling governmental interest narrowly tailored to that interest. *Lukumi*, 508 U.S. at 531-32; 775 ILCS 35/15.

For an interest to be compelling, it must rise to the same very high level the law requires for race-based classifications to be legal, *see Adarand Constructors v. Peña*, 515 U.S. 200 (1995), and must guard against "only the gravest abuses, endangering paramount interests." *Thomas v. Collins*, 323 U.S. 516, 530 (1945). It is the government's burden to prove it has a compelling interest and the "burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429-30 (2006).

The compelling interest test is satisfied through application of the challenged law "to the person—the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro*, 546 U.S. at 430-31. In other words it is not enough for the City to allege a

general compelling interest, but it must apply its compelling interest to the particular claimant and circumstances.

Here, Blue Island simply cannot show a compelling governmental interest in applying the 2012 LSC to require ARH to install automatic sprinkler systems in Buildings C and D because the 2012 LSC makes exceptions that allow similarly situated uses to operate without a sprinkler system. See **Exhibit F**, Chapters 29 and 33 (Existing Hotels and Dormitories, without reference to the number of people being housed, do not require sprinkler systems. In addition, existing Residential Board and Care Occupancies do not require sprinkler systems). Because Blue Island makes exceptions for similar uses, it cannot argue that it has a compelling interest in requiring ARH to install sprinkler systems.

 Further, because the Illinois Administrative Code preempts Blue Island's application of the LSC to Recovery Homes, which includes ARH, Blue Island has no jurisdiction to apply the 2012 LSC. Because the LSC requirements are governed by Illinois state law which preempts Blue Island's local law, the application of Blue Island's 2012 LSC to ARH is, *per se*, not compelling. Further, even if the Court finds that Plaintiff has not met its burden to show that the compelling interest test applies, which the Plaintiff asserts that it does, then the court should still find in ARH's favor because even under the rational basis test, Blue Island's application of the 2012 LSC to Plaintiff must fail because state law preempts it.

For these reasons, the Court should find that Blue Island has violated Plaintiff's rights under the Free Exercise Clause and IRFRA.

**2. The Application of the 2012 to Plaintiff Violates Plaintiff's Rights to Free Association Under the First Amendment**

Similarly, Blue Island's application of the 2012 LSC violates Plaintiff's rights under the First Amendment Freedom of Association. Infringements on the right to freedom of association must

be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms. *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (U.S. 1984). For the same reasons explained in Plaintiff's Free Exercise and IRFRA section, Blue Island cannot show a compelling governmental interest in applying the 2012 LSC to require ARH to install automatic sprinkler systems because the Illinois Administrative Code preempts Blue Island's application of the LSC to Recovery Homes. Clearly, then, the application of the 2012 LSC to ARH by Blue Island violates Plaintiff's right to freedom of association.

## IV. CONCLUSION

For the aforementioned reasons, the Court should grant Plaintiff's Motion for Partial Summary Judgment.

Respectfully Submitted,

**AFFORDABLE RECOVERY HOUSING**

/s/ Andy R. Norman

John W. Mauck
Andy R. Norman
Jeffrey M. Schwab
Mauck & Baker, LLC
1 North LaSalle Street, Suite 600
Chicago, IL 60602
(312) 726-1243

F:\Clients\3065\Motions\Draft Motions and Notices\20140224_MEMO_MotSummJudgment.docx