# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AFFORDABLE RECOVERY HOUSING | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-4241 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| THE CITY OF BLUE ISLAND, a municipal corporation, and TERRY VRSHEK in his official capacity as Blue Island Fire Chief | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Affordable Recovery Housing's motion for partial summary judgment for declaratory relief [72]. In September 2013, Plaintiff obtained a license from the Illinois Department of Human Services ("DHS" or "the Department") to operate a Recovery Home. The Department is charged with regulating and licensing Recovery Homes, which provide substance abuse services and housing for recovering alcoholics and substance users. Pursuant to the statutory authority granted to it in the Alcoholism and Other Drug Abuse and Dependency Act, 20 ILCS 301 *et seq.*, DHS enacted a comprehensive regulatory scheme regarding Recovery Homes. Under the DHS regulations, Plaintiff is not required to install sprinkler systems for fire safety purposes in its buildings. Under the Life Safety Code adopted by Defendant City of Blue Island, however, sprinkler systems are required. For the reasons that follow, the Court concludes that the DHS regulations preempt the City's Life Safety Code such that the City may not enforce its sprinkler requirements against Plaintiff. Accordingly, the Court grants Plaintiff's motion for partial summary judgment for declaratory relief.

## I. Background

Affordable Recovery Housing ("ARH") is faith-based, Christian organization that provides housing and recovery services to adult men with alcohol addiction. In March 2011, ARH began renting a property from the Mantellate Sisters of Mary located in Blue Island, Illinois. ARH uses five buildings to run its services, labeled Buildings A through E. At issue for present purposes are Buildings C and D, which are known as the "old convent" and the "high school." ARH seeks to house recovering alcoholics in these two buildings.

On May 24, 2012, the City's fire chief, Defendant Terry Vrshek, ordered ARH to vacate the premises, in part because the buildings lacked sprinkler systems in violation of the 2012 National Fire Protection Association's Life Safety Code, which the City had adopted. A few days later, Plaintiff filed a complaint against the City and its fire chief as well as a motion for a temporary restraining order and a preliminary injunction. The Court denied Plaintiff's motion on the issue of whether the 2012 Life Safety Code, as adopted by the City, required Plaintiff to install automatic sprinkler systems, as the City insisted. Plaintiff moved its residents in recovery off the premises as a result, and only ARH staff have resided there since.

On September 11, 2013, ARH obtained a license to operate a Recovery Home from DHS/Division of Alcoholism and Substance Abuse and filed a Second Amended Complaint shortly thereafter with allegations regarding its newly obtained license. Under the Alcoholism and Other Drug Abuse and Dependency Act, DHS provides licensure requirements for recovery home services. See 20 ILCS 301/15-10(f). Persons who provide treatment for alcoholism must be licensed to do so by DHS, and DHS may undertake inspections and investigations to ensure that the license requirement is followed. See 20 ILCS 301/15-5(a). The recovery home

licensure requirements (the "DHS Regulations") are set forth in Title 77 of the Illinois Administrative Code. Recovery Homes are defined there as:

> alcohol and drug free housing components whose rules, peer-led groups, staff activities and/or other structured operations are directed toward maintenance of sobriety for persons who exhibit treatment resistance, relapse potential and/or lack of suitable recovery living environments or who recently have completed substance abuse treatment services or who may be receiving such treatment services at another licensed facility.

77 ILAC § 2060.509. The DHS Regulations govern the operations of Recovery Homes and set forth various requirements to be followed. Subsection (e) provides that Recovery Homes must:

> comply with all applicable zoning and local building ordinances and the provisions specified in Chapter 26 (Lodging or Rooming Houses) of the National Fire Protection Association's (NFPA) Life Safety Code of 2000 (no later amendments or editions included) for any building housing 16 or fewer residents and with the provisions specified in Chapter 29 (Existing Hotels and Dormitories) of the NFPA Life Safety Code of 2000 (no later amendments or editions included) for any building housing 17 or more residents[.]

*Id.* § 2060.509(e).

At issue is the specification in the DHS Regulations that Chapter 29 of the 2000 Life Safety Code, "no later amendments or editions included," applies to buildings that house 17 or more residents. (Buildings C and D are subject to this requirement, as they will house at least 17 men.) According to Plaintiff, automatic sprinklers are not required for the ARH buildings under Chapter 29 of the 2000 Code, because they do not qualify as high-rise buildings. See 2000 NFPA Life Safety Code, § 29.3.5.1–2.[1] Plaintiff argues that Chapter 29 of the 2000 Code preempts the 2012 Life Safety Code adopted by Blue Island such that Blue Island may not impose its more restrictive sprinkler system requirement.

---

[1] Section 29.3.5.1 of the 2000 Life Safety Code provides that "[w]here an automatic sprinkler system is installed * * * the system shall be in accordance with Section 9.7 [of the Code]. In buildings up to and including four stories in height, systems in accordance with NFPA 13R * * * shall be permitted." [72] Ex. E. Section 29.3.5.2 requires "an approved, supervised automatic sprinkler system in accordance with 29.3.5.1" for "all high-rise buildings." *Id.*

Defendants do not dispute that under the 2000 Life Safety Code, Plaintiff need not install sprinkler systems. See Defs.' Resp. [76]; Defs.' Memo. [77]. Rather, Defendants contend that preemption does not apply because the DHS Regulations call for concurrent regulation of Recovery Homes by local and state authorities. Defendants maintain that the City's sprinkler system requirement—contained in Chapter 32 of the 2012 Life Safety Code adopted by the City—applies in addition to the minimum requirements set forth in the DHS Regulations.

## II.     Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

**III.     Discussion**

Plaintiff argues that Illinois has enacted a comprehensive system regulating Recovery Homes. Thus, according to Plaintiff, the DHS Regulations (including the 2000 Life Safety Code requirement) preempt conflicting municipal rules such that Blue Island may not apply the 2012 Life Safety Code. Although licensed Recovery Homes must "comply with all applicable zoning and local building ordinances" generally, see 77 ILAC § 2060.509(e), Plaintiff argues that the DHS Regulations mandate the use of the 2000 Life Safety Code, particularly given the explicit rejection of later versions of the Code, see *id.* (specifying that "no later amendments or editions" to Chapter 29 of the 2000 Code are to be included).

In Illinois, preemption doctrine depends on whether the municipality at issue is a "home rule" or "non-home rule" unit. To preempt a home rule unit's exercise of legislative power, the Illinois General Assembly must expressly state that it is doing so in the relevant statute. *Pesticide Pub. Policy Found. v. Village of Wauconda*, 622 F. Supp. 423, 428 (N.D. Ill. 1985). By contrast, with a non-home rule unit—like the City of Blue Island—legislative intent to preempt may be implied. *Id.* at 429.

Under the doctrine of preemption by implication, "where the legislature has enacted a *comprehensive system of regulation and licensure * * ** the legislature implies by that system that there is no room for regulation by local governmental units." *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 261 (Ill. 2003) (emphasis added); see also *Pesticide Pub. Policy Found.*, 622 F. Supp. at 429 ("[E]xclusivity may be expressed * * * by enactment of a comprehensive regulatory scheme[.]") (quoting *Hutchcraft Van Service, Inc. v. City of Urbana Human Relations Comm'n.*, 104 Ill. App. 3d 817, 823 (Ill. App. Ct. 4th Dist. 1982)); *Union Nat. Bank and Trust Co. v. Board of Supervisors of Kendall Cnty.*, 65 Ill. App. 3d 1004, 1008 (Ill.

5

App. Ct. 2d Dist. 1978) ("[T]he General Assembly by enacting a comprehensive regulatory scheme * * * implied that counties and other non home rule units of local government should have no power to regulate this activity."). Legislative intent to preempt is also inferred where the state hopes to achieve state-wide uniformity in a particular area, see *Pesticide Pub. Policy Found.*, 622 F. Supp. at 430, or where a state agency is established "for the purpose of a comprehensive regulatory scheme," *Hutchcraft Van Service, Inc.*, 104 Ill. App. 3d at 823 (quoting *Illinois Liquor Control Com. v. City of Joliet*, 26 Ill. App. 3d 27, 32 (Ill. App. Ct. 3d Dist. 1975)). Agency regulations may preempt a local ordinance, just as a statute may. See *Hawthorne*, 204 Ill. 2d at 262 ("[The Village] is prohibited from regulating day-care homes under its zoning ordinance in a manner that conflicts in any way with the Child Care Act of 1969 *or the DCFS [(Department of Children and Family Services)] regulations* adopted pursuant to that Act.") (emphasis added).

Where the state establishes standards to govern regulation in a particular area, municipalities may not enact more restrictive regulations, absent specific authority to do so. *Dolson Outdoor Advertising Co. v. City of Macomb*, 46 Ill. App. 3d 116, 121 (Ill. App. Ct. 3d Dist. 1997). This is true even where the municipality is authorized generally to regulate in the area. For example, in *Pesticide Public Policy Foundation*, local ordinances limiting the application of pesticides and requiring the posting of warning signs were held to be preempted by two Illinois statutes that regulated pesticides. Preemption applied even though the court recognized that municipalities may legislate in a wide range of community health hazards under the Illinois Municipal Code. See *Pesticide Pub. Policy Found.*, 622 F. Supp. at 427, 430. Because pesticide applicators were "already [ ] subject to extensive State regulation and licensure" and the legislation indicated "a desire for uniformity of regulation," the municipality

6

could not impose further restrictions and an additional license requirement. See *id.* at 430. Similarly, in *Hawthorne*, the Supreme Court affirmed that a comprehensive scheme regulating day-care homes prohibited a municipality from enforcing zoning ordinances "in a manner that conflicts in any way" with the regulations promulgated by the Department of Children and Family Services. See 204 Ill. 2d at 261–62. See also *Union Nat. Bank and Trust Co.*, 65 Ill. App. 3d at 1006 (holding that county could not prohibit strip-mining pursuant to its zoning ordinance where plaintiff possessed a permit from the Illinois Department of Mines and Minerals to strip mine limestone).

Here, the regulations promulgated by DHS cover eight substantive areas regarding the management and operations of Recovery Homes. The day-care regulations in *Hawthorne* are quite analogous to those here. In that case, the Illinois Supreme Court affirmed that the regulations at issue were comprehensive and preemptive because they covered a wide breath of matters. Specifically, the regulations set forth standards regarding the physical facilities that day-care homes must possess; characteristics and qualifications of the homes' family, caregivers, assistants and substitute caregivers; the number and ages of children that homes may serve; the opportunities for daily activity that homes must provide; and "a wide variety of other matters ranging from nutrition and meals to recordkeeping." *Hawthorne*, 204 Ill. 2d at 259–60.

The DHS Regulations at issue here set forth similar types of requirements for Recovery Homes. Section 2060.509 in the Administrative Code requires Recovery Homes to "offer regularly scheduled peer-led or community gatherings (self-help groups, etc.) that are held a minimum of five days per week and provide recovery education groups weekly," 77 ILAC § 2060.509(a); "have written linkage agreements with substance abuse providers" in accordance with another section of the Code, *id.* § 2060.509(b); "establish a referral network to be utilized

by residents for any necessary medical, mental health, substance abuse, vocational or employment resources, and maintain the confidentiality of client identifying information," *id.* § 2060.509(c); "establish a budget that specifies monthly operating expenses * * * plus emergency reserve by providing documentation of access to a minimum sum equivalent to the total of two months of operating expenses," *id.* § 2060.509(d); maintain various types of insurance coverage, *id.* § 2060.509(f); and employ a full-time Recovery Home Operator and at least one Recovery Home Manager who have certain responsibilities, hold certain certifications, and have minimum hours of work experience, see *id.* § 2060.509(g)-(h). Like those in *Hawthorne*, the DHS Regulations are comprehensive and imply that local government may not regulate Recovery Homes in a manner that conflicts with the rules and standards set forth by DHS. See *Hawthorne*, 204 Ill. 2d at 261–62.

In opposition to preemption, Defendants primarily argue that the legislature intended for concurrent regulation of Recovery Homes. Defendants argue that regulation of Recovery Homes has not been reserved exclusively to DHS and that local government units have authority to impose their own requirements pursuant to § 2060.509(e), the enabling statute that created DHS, and the Illinois Municipal Code. According to Defendants, Blue Island is permitted to further regulate and impose the additional requirement of sprinkler systems, even though DHS does not require them.

Defendants first point to the introductory phrase of subsection (e) of § 2060.509, which states that Recovery Homes must "comply with all applicable zoning and local building ordinances[.]" Defendants argue that by placing this phrase at the beginning of the subsection, the General Assembly indicated that Chapter 29 of the 2000 Life Safety Code merely set a minimum standard. See Defs.' Memo. 1–2. Defendants next point to the enabling statute, the

Illinois Alcoholism and Other Drug Dependency Act, which created DHS. It states in relevant part:

> It is declared to be the public policy of this State * * * that the powers and functions set forth in this Act and expressly delegated to the Department [of Human Services] are exclusive State powers and functions. *Nothing herein prohibits the exercise of any power or the performance of any function, including the power to regulate, for the protection of the public health, safety, morals and welfare, by any unit of local government, other than the powers and functions set forth in this Act and expressly delegated to the Department* to be exclusive State powers and functions.

20 ILCS 301/5-5(b) (emphasis added). Defendants argue that the Act did not explicitly reserve regulation of Recovery Homes to the Department, even though the Act enumerates various other activities that the Department "shall" carry out. See Defs.' Memo 3–5 (citing 20 ILCS 301/5-10(a)). Defendants also argue that the Act's acknowledgment of local regulatory power establishes the legislature's intent to allow concurrent regulation. See *id.* at 5. Finally, Defendants argue that Blue Island has the power to enforce fire safety standards under the Illinois Municipal Code. See *id.* at 8–9 (quoting 65 ILCS 5/11-8-2) ("The corporate authorities may cause all buildings and enclosures which are in a dangerous fire condition to be put in a safe fire condition[.]").

The Court respectfully disagrees with these arguments and concludes that Blue Island cannot apply a version of the Life Safety Code that conflicts with that required by DHS. As a preliminary matter, the General Assembly has, in fact, reserved licensure requirements of Recovery Homes to DHS, contrary to Defendants' assertion. Article 15 of the Alcoholism and Other Drug Abuse and Dependency Act states that:

> [i]t is unlawful for any person to provide treatment for alcoholism * * * or to provide services as specified in subsection[ ] * * * (f) of Section 15-10 of this Act [for recovery home services] unless the person is licensed to do so by the Department.

9

20 ILCS 301/15-5(a). Article 15 goes on to provide that the "Department shall, by rule, provide licensure requirements for * * * [r]ecovery home services for persons in early recovery from substance abuse or for persons who have recently completed or who may still be receiving substance abuse treatment services." 20 ILCS 301/15-10(f). Article five of the Act also states that:

> the Department shall * * * promulgate regulations to provide appropriate standards for publicly and privately funded programs * * * which provide an array of services for prevention, intervention, treatment and rehabilitations for alcoholism and other drug abuse or dependency.

20 ILCS 301/5-10(a)(6). It is thus clear from the Alcoholism and Other Drug Abuse and Dependency Act that the General Assembly intends for DHS—not local governments—to promulgate licensure requirements and other appropriate regulations for Recovery Homes.

Second, under Illinois law, the DHS Regulations may preempt Blue Island's Life Safety Code, notwithstanding the City's general power to regulate with respect to fire safety, zoning, and the public health and safety. Several Illinois cases have dealt with this scenario of overlapping state and local power. In *Hutchcraft Van Service, Inc.*, the Illinois Appellate Court held that the Illinois Human Rights Act preempted a municipal ordinance that provided broader discrimination protections because the Act provided a comprehensive statutory scheme. See 104 Ill. App. 3d at 824. Importantly, preemption applied even though the Human Rights Act allowed local governments to create their own local commissions to prevent unlawful discrimination. Because there was "no general warrant to local governments to create commissions with powers and duties beyond the scope of [the Act]," however, the Court concluded that it was impermissible for a municipal ordinance to "attempt[] a broader scope than that set forth in [the Act]." See *id.* Similarly, in *Pesticide Public Policy Foundation*, local ordinances could not impose additional requirements on pesticide applicators even though the municipality had

authority under the Illinois Municipal Code to legislate with respect to community health hazards. See 622 F. Supp. at 427, 430.

As these cases demonstrate, where the state has enacted a comprehensive regulatory scheme, preemption still applies despite some local regulatory authority to regulate in the area. Here, there is no doubt that Blue Island has authority as a municipality to enact zoning ordinances and ensure that local buildings are safe. Nonetheless, in the face of DHS's comprehensive system of regulation and licensure, the City cannot "attempt[ ] to impose further restrictions on" Recovery Homes because they "already are subject to extensive State regulation and licensure." See *Pesticide Pub. Policy Found.*, 622 F. Supp. at 430.

Defendants cite *Village of Carpentersville* and *State Bank of Waterloo* in support of their concurrent regulation argument. Both cases are distinguishable. Unlike the regulations and statutes in this case, the state statutes at issue specifically called for concurrent state and local regulation.

In *Village of Carpentersville*, the Illinois Supreme Court held that a height restriction in a municipal zoning ordinance was not preempted by a requirement set forth in a permit issued by the Illinois Environmental Protection Agency pursuant to the Environmental Protection Act. See *Village of Carpentersville v. Pollution Control Bd.*, 135 Ill. 2d 463, 465 (Ill. 1990). In so holding, the Court recognized that the relevant statutory provision "ha[d] been amended in a manner that makes clear that the [Environmental Protection] Act no longer preempts local zoning ordinances." *Id.* at 468. Specifically, the amended Act provided that:

> [n]o permit * * * may be granted by the [Environmental Protection] Agency *unless the applicant submits proof to the Agency that the applicant has secured all necessary zoning approvals from the unit of local government having zoning jurisdiction over the proposed facility.*

11

*Id.* at 469 (quoting 1981 Ill. Laws 3574) (emphasis original). As the Court explained, the amendment established that the legislature "no longer intended that the Act preempt local zoning ordinances." *Id.*

Likewise, in *State Bank of Waterloo* the Illinois Appellate Court held that a city ordinance was not preempted by state regulation and could deny access to a highway where the state had allowed access. See *State Bank of Waterloo v. City of Waterloo*, 339 Ill. App. 3d 767, 778 (Ill. App. Ct. 5th Dist. 2003). There, however, the Illinois Highway Code "contain[ed] a system of regulation that involves concurrent state, county, and municipal regulation of highways and roads," and cases interpreting the Highway Code "expressly recognize[d] that the control of highways is a matter of both statewide concern and local concern." *Id.* at 772. Specifically, the Highway Code provided:

> It is further declared that highway transportation system development *requires the cooperation* of State, county, township, and municipal highway agencies and coordination of their activities on a continuous and partnership basis[,] and the *legislature intends such cooperative relationships* to accomplish this purpose.

*Id.* (quoting 605 ILCS 5/1-102 (West 2000)) (emphasis added).

By contrast, § 2060.509 of the DHS Regulations—while acknowledging that local zoning and buildings ordinances should be followed—does not call for joint regulation or licensing of Recovery Homes; nor does it state, as in *Village of Carpentersville*, that a license is conditioned on first proving compliance with local building ordinances. Rather the Alcoholism and Other Drug Abuse and Dependency Act specifically requires a state agency, DHS, to provide licensure requirements, and nothing states or implies that local government was meant to share the task. See 20 ILCS 301/15-10(f); 20 ILCS 301/5-10(a)(6).

Moreover, the DHS Regulations promulgated pursuant to the Department's statutory authority state that Chapter 29 of the 2000 Life Safety Code applies to Recovery Homes, "no

later amendments or editions included." This language forecloses any argument that DHS intended for later versions of the Life Safety Code to apply if they were subsequently adopted by municipalities.

In conclusion, Plaintiff has established that the DHS Regulations regarding Recovery Homes preempt Blue Island's conflicting sprinkler system requirements. Plaintiff has obtained a license from DHS to operate a Recovery Home as required by the Alcoholism and Other Drug Abuse and Dependency Act. Accordingly, Blue Island may not apply the requirements set forth in Chapter 32 of the 2012 Life Safety Code to ARH.

## IV. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for partial summary judgment for declaratory relief [72].[2]

Dated: November 17, 2014

_____
Robert M. Dow, Jr.
United States District Judge

---

[2] At the end of Plaintiff's motion for partial summary judgment [72], Plaintiff requests that the Court also enter declaratory judgments as a matter of law that "a sprinkler system is not required for ARH's Buildings C and D under Chapter 29 of the 2000 NFPA Life Safety Code, even if ARH's use is considered a change in use" and "that Affordable Recovery Housing can move men in Buildings C and D without installing sprinkler systems in those buildings under the Illinois Administrative Code title 77, §2060.509 and Chapter 29 of the 2000 NFPA Life Safety Code, assuming compliance with other codes." Pl.'s Mot. at 5, ¶¶ B–C. The parties have focused their briefing, however, on the specific legal issue of whether §2060.509 of the DHS Regulations preempts the City of Blue Island's adoption and application of the 2012 Life Safety Code with respect to Plaintiff. The Court's ruling is limited to that particular issue, as set forth in this memorandum opinion.